UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RAGAR TRANSPORTATION, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:15-CV-223 |
| | § | |
| LEAR CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

This commercial shipping fee dispute is before the Court on the basis of diversity jurisdiction. By way of background, Plaintiff Ragar Transportation, Ltd. was hired in 2009 by written agreement to provide transportation services for Lear Corporation, a manufacturer of automotive seat components, through Lear's logistics management agent, Ryder Integrated Logistics, Inc. Ryder oversaw the logistics services in question until 2015, when a new agreement was signed with Penske Logistics, LLC serving as Lear's agent in the place of Ryder. The 2009 and 2015 agreements provided that Plaintiff was to pick up seat component parts and deliver them to Lear's assembly and manufacturing plants in shipments designated either "one way" or "round trip." Quite often, however, shipments designated initially as round-trip were modified to one-way just before or during transit. Eventually, a dispute arose over the level of compensation for these modified shipments, such that Lear came to withhold payment for over $2 million in Plaintiff's invoiced transportation services. Plaintiff brings suit against Lear and its two agents, Ryder and Penske, grounded in part on fraud-based theories of liability.

Before the Court now is Plaintiff's motion for leave to amend its complaint. (Dkt. 3.) Through its amended complaint, Plaintiff would add as co-defendants a Joe Moreno and a Juan Antonio Loyo, two Ryder employees claimed to have made fraudulent representations in both

their individual and representative capacities. (*Id.* at 3-5.) Because the addition of Moreno and Loyo would destroy this Court's diversity jurisdiction, Plaintiff has contemporaneously filed a motion to remand. (Dkt. 4.)

Generally under Rule 15(a) of the Federal Rules of Civil Procedure, motions for leave to amend the pleadings are to be freely granted. *See* Fed. R. Civ. P. 15(a)(2). But in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), the Fifth Circuit articulated four factors that a court must weigh in considering whether to grant a motion for leave to join a non-diverse defendant. The *Hensgens* factors look to (1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether plaintiff has been dilatory in asking for amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities. *Id.* at 1182.

In support of its requested relief, Plaintiff argues primarily with respect to the first "purpose" factor that its fraud-related claims against Moreno and Loyo are indeed valid under Texas law. (*See* Dkt. 3 at 6-8.) The only defendant specifically opposing Plaintiff's motions is Lear (*see* Dkts. 10, 12), whose response also focuses on the "purpose" factor. According to Lear, Plaintiff's proposed fraud claims are invalid for the reason that they fail to meet Rule 9(b)'s heightened particularity standards. (*See* Dkt. 10 at 4.) Lear also points to certain factual circumstances which reflect on the ostensible purpose behind Plaintiff's motion. (*See id.* at 3-5.) Plaintiff has submitted pleadings in reply. (Dkts. 17, 19.)

The Court, having considered the briefs submitted by the parties and the applicable law, is of the opinion that Plaintiff's motions should both be denied.

## **Discussion**

Each of the *Hensgens* factors will be discussed in turn.

**A. Purpose of the amendment**

With respect to the first *Hensgens* factor, Plaintiff states that the purpose of its amendment is simply to bring before the Court all the proper and necessary parties to the litigation. (Dkt. 3 at 6-7.) Plaintiff asserts that Moreno and Loyo, "each acting individually and as a representative and agent for Ryder and Lear, made material representations to [Plaintiff] regarding how [Plaintiff] should perform, charge, document and invoice certain transportation services and promising payment to [Plaintiff] for performing those services in accordance with their instructions." (*Id.* at 5.) Acting in reliance on those representations worked only to its detriment, Plaintiff contends, because the defendant companies then withheld payment for a significant part of the services rendered. (*Id.* at 5-6.) Upon these allegations, Plaintiff would bring claims sounding in fraud against Moreno and Loyo in both their individual and representative capacities. In Plaintiff's words, "[t]he law is well-settled that a corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation." (*Id.* at 7-8 (citing *Commercial Escrow Co. v. Rockport Rebel, Inc.*, 778 S.W.2d 532, 541 (Tex. App. 1989)).

Lear, on the other hand, is of the view that Plaintiff's request to amend the complaint is nothing more than "a transparent attempt to defeat federal court jurisdiction . . . ." (Dkt. 10 at 2.) While Lear does not appear to contest the general viability of direct suits against corporate representatives, it does take the position that Plaintiff's fraud claims against Moreno and Loyo "are deficiently plead and fail to meet the particularity requirement of [Rule] 9(b)." (*See id.* at 4.) Lear contends in this regard that Plaintiff "does not allege any causes of action specific to the individual non-diverse defendants[,] nor does [Plaintiff] allege that the individual non-diverse defendants made any specific misrepresentations." (*Id.*) Moreover, the true purpose behind

Plaintiff's motion to amend, according to Lear, can be discerned from its timing.

> [W]hen [Plaintiff] initiated litigation in state court, it knew the identity of the non-diverse defendants, Moreno and Loyo, and knew of their involvement in the interactions between [Plaintiff] and Ryder. If [Plaintiff] truly had a claim against these non-diverse individuals, it could have included them in the original complaint in state court. Instead, [Plaintiff] waited until after removal to federal court . . . to add the non-diverse individuals.

(*Id.* at 3.)

In reply, Plaintiff highlights several paragraphs in the amended pleadings which it contends provide the particularity required by Rule 9(b). (*See* Dkt. 17 at 5-7.) As to Lear's second point, Plaintiff does not contest that it was unaware of Moreno and Loyo's involvement. Plaintiff asserts instead that the necessity of joining these individuals only became apparent after Lear filed its answer and counterclaim in state court. (*See id.* at 3.) Beyond revealing Plaintiff and Lear's respective understandings of the compensation scheme for modified shipments, Plaintiff contends that Lear's pleadings "directly contradict the express representations made by [Moreno and Loyo] with respect to the manner in which [Plaintiff] was to perform the services for Lear and how [Plaintiff] would be compensated for those services." (*See id.* at 4.) "[I]f Lear's contentions, as set forth in the Answer and Counter-Claim, were determined to be correct," according to Plaintiff, "[Moreno and Loyo] would be directly responsible in their individual capacity for their fraud and misrepresentations and resulting damages to [Plaintiff], such that naming them as parties to this suit following receipt of Lear's pleadings was completely appropriate and not primarily for the purpose of destroying diversity." (*Id.* at 5.)

Indeed, the first *Hensgens* factor is often deemed the most important, as "[j]urisdiction is not so malleable that [p]laintiffs can creatively forum shop through manipulation of the Rules." *See Adey/Vandling, Ltd. v. Am. First Ins. Co.*, 2012 WL 534838, at *4 (W.D. Tex. Feb. 17, 2012) (quoting *Sanders v. Gen. Motors Corp.*, 2001 WL 1297443, at *3 (N.D. Tex. Oct. 10, 2001)).

Typically, the analysis of this factor will depend on whether a colorable claim exists against the proposed defendant. *See Tillman v. CSX Transp., Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991). "Where the proposed claims are viable, 'it is unlikely that the primary purpose of the amendment is to destroy diversity jurisdiction,' and this factor favors joinder." *Robles v. Archer W. Contractors, LLC*, 2015 WL 4979020, at *5 (N.D. Tex. Aug. 19, 2015) (quoting *McNeel v. Kemper Cas. Ins. Co.*, 2004 WL 1635757, at *2 (N.D. Tex. July 21, 2004)). To the extent that the viability of the plaintiff's claims is unclear, courts will analyze them in the light most favorable to the plaintiff. *Robles*, 2015 WL 4979020, at *5.

This general presumption is nonetheless subject to exception. "[W]hen the plaintiff knew about the nondiverse party's activities at the time the suit was originally brought in state court but still chose not to include that party as an original defendant, courts have viewed any later attempt to add the nondiverse party as a defendant as nothing more than an attempt to destroy diversity." *In re Norplant Contraceptive Prods. Liab. Litig.*, 898 F. Supp. 433, 435 (E.D. Tex. 1995); *see also O'Connor v. Auto. Ins. Co. of Hartford Conn.*, 846 F. Supp. 39, 41 (E.D. Tex. 1994). The timing of an amendment is also important, such that the simultaneous filing of an amended complaint and motion for remand soon after removal suggests that the purpose of the amendment is to defeat jurisdiction. *See Rouf v. Cricket Commc'ns, Inc.*, 2013 WL 6079255, at *3 (S.D. Tex. Nov. 19, 2013); *see also Gallegos v. Safeco Ins. Co. of Ind.*, 2009 WL 4730570, at * 4 (S.D. Tex. Dec. 7, 2009).

Even assuming that Plaintiff's proposed fraud claims against Moreno and Loyo are valid and satisfy the requirements of Rule 9(b), several factors lead the Court to conclude that Plaintiff brings its motion with an eye trained on forum shopping. In support of this conclusion is the fact that Plaintiff's motion to amend comes on the heels of removal and with a motion to remand in

tow. Furthermore, Plaintiff does not dispute that it was aware of Moreno and Loyo's activities when it initiated suit in state court. Insofar as Lear's understanding of the compensation scheme only became clear until it filed its responsive pleadings, Plaintiff fails to satisfactorily explain why this necessitates joining Moreno and Loyo in their individual capacities. Things would be different perhaps had Plaintiff asserted that Lear's pleadings revealed actions and statements made by Moreno and Loyo outside the scope of their employment with Ryder. But a review of the amended complaint reveals that Ryder, Moreno, and Loyo are consistently treated as a single entity and that Plaintiff seeks to attribute Moreno and Loyo's statements to Ryder under a theory of *respondeat superior*. As just one example, the amended complaint states that—

> [f]rom March 12, 2009 to January 16, 2015, [Plaintiff] provided transportation services to Lear pursuant to the terms of the 2009 . . . Agreement. During that time, *Ryder, Moreno and Loyo* provided instruction and direction and made representations to [Plaintiff] with respect to providing transportation services and charging or invoicing for certain round trips as further described below, in which there was no load on the return leg due to no fault of [Plaintiff]. *Ryder, Loyo and Moreno* advised that the round trips in question were considered a "failure to ship on a planned/scheduled route" and instructed that [Plaintiff] should charge, document [sic] same with "NO FREIGHT AVAILABLE" on a bill of lading, invoice [sic] and [Plaintiff] would be entitled to be paid for both legs as if a round trip with loads on both end [sic] had been completed. It was made clear to [Plaintiff] that the failure to follow the foregoing procedure would result in [Plaintiff] not being paid the full amount due to [it]. [Plaintiff] relied on these instructions and representations by Lear's *agents* and has now suffered damages as a result thereof, in that Penske and Lear have refused to pay or have set off from other invoices, charges and payments due to Plaintiff, amounts Lear now claims it was overcharged for the round trips performed under the 2009 . . . Agreement that were billed according to the representation of Lear, *Ryder, Moreno and Loyo*.

(Dkt. 3, Attach. 1 at 7-8 (emphasis added).)

For these reasons, the Court is of the opinion that Plaintiff's motion to amend was filed in large part for the purpose of defeating this Court's diversity jurisdiction, and thus the first *Hensgens* is effectively neutral.

**B. Dilatoriness**

It is uncontested that Plaintiff was not dilatory in filing its motion to amend. Typically, proposed amendments are deemed timely when no pretrial dates have been scheduled and no significant activity beyond the pleading stage has occurred. *See Martinez v. Holzknecht*, 701 F. Supp. 2d 886, 891 (S.D. Tex. 2010). But the analysis changes where, as here, the proposed amendment comes shortly after removal, such that a delay of two months after the filing of the original complaint or thirty days after the notice of removal will be found dilatory. *See Multi-Shot, LLC v. B & T Rentals, Inc.*, 2010 WL 376373, at *9 (S.D. Tex. Jan. 26, 2010) (citing *Irigoyen v. State Farm Lloyds*, 2004 WL 398553, at *4 (S.D. Tex. Jan. 5, 2004)). Plaintiff here filed its motion to amend within the above timeframes.

**C. Injury**

With regard to third *Hensgens* factor, Plaintiff contends that it would be prejudiced by the Court's denial of its motion to join Moreno and Loyo as co-defendants. Again, Plaintiff asserts that Lear's reading of the compensation agreement is different from Moreno and Loyo's representations, and should Lear's reading be deemed correct, recourse will need to be sought directly against Moreno and Loyo. (*See* Dkt. 17 at 4-5.) Moreover, aside from adding two co-defendants, Plaintiff notes that it also seeks to amend to add as a co-plaintiff a sister corporation said to have been a party to the 2015 transportation services agreement. (*See* Dkt. 3 at 3, 5-8.) Denial of its motion, Plaintiff claims, would thus cause it to "bear the additional expense and inconvenience of parallel federal and state court proceedings" and, with those parallel proceedings, "the risk of inconsistent verdicts." (*Id.* at 8-9.) Lear, on the other hand, in noting that the amended complaint alleges a theory of *respondeat superior* liability, argues that Plaintiff's true interest lies in seeking recovery against Ryder. (*See* Dkt. 10 at 4-5.)

"The main concern expressed in *Hensgens* was the possibility of parallel federal and state proceedings." *Holcomb v. Brience, Inc.*, 2001 WL 1480756, at *3 (S.D. Tex. Jan. 26, 2010). Under this injury-related factor, "[c]ourts . . . determine whether, if the amendment is denied, plaintiffs will be forced to litigate their actions against the defendants they seek to add in state court—in a different court system, on a different timetable, subject to different procedural rules and conflicting results, and under the weight of additional financial burden." *Zetino v. Allstate Tex. Lloyd's*, 2011 WL 5416323, at *3 (S.D. Tex. Nov. 7, 2011). In other words, where claims against the existing defendant and the proposed non-diverse defendant derive from the same set of facts or legal questions, courts recognize that denying joinder burdens the plaintiff with the increased time and expense of litigating parallel cases. *Robles*, 2015 WL 4979020, at *7. At the same time, courts will consider "whether a plaintiff can be afforded complete relief in the absence of the amendment." *Lowe v. Singh*, 2010 WL 3359525, at *3 (S.D. Tex. Aug. 23, 2010) (quoting *Jerido v. Am. Gen. Life & Accident Ins. Co.*, 127 F. Supp. 2d 1322, 1325 (M.D. Ala. 2001)). For example, in *O'Connor v. Automobile Insurance Co. of Hartford Connecticut*, 846 F. Supp. 39 (E.D. Tex. 1994), the district court found that the plaintiff would not be prejudiced through the denial of his motion to amend the complaint to add a non-diverse insurance agent where there was nothing to indicate either that the insurers would be unable to satisfy a future judgment or that the agent was the sole cause of the injury. *See id.* at 41.

As already discussed, the amended complaint consistently refers to Ryder, Moreno, and Loyo in unison, thus leaving the impression that Plaintiff seeks to hold Moreno and Loyo individually liable only for statements made in their concomitant capacities as Ryder's representatives. One advantage to also bringing an individual-capacity claim in situations such as these is that it provides the plaintiff with another party against whom to satisfy an eventual

judgment. Nonetheless, here there is little reason to doubt that a judgment could be fully satisfied by Ryder alone—the deep pocket. Nor does Plaintiff claim that Moreno and Loyo are solely responsible for statements made outside the scope of their employment. It is thus doubtful that Plaintiff would go to the lengths of filing a separate state-court suit against these individual defendants. Furthermore, to the extent that the denial of Plaintiff's motion would preclude the joinder of its sister corporation, any prejudice stemming therefrom can be cured by a separate and targeted amendment.

Therefore, this factor weighs against Plaintiff.

### D. Equitable factors

In raising other equitable factors, Plaintiff first complains that "Lear removed this suit prior to any Defendant being served," and "because of such tactic, [Plaintiff] now [has] to amend [its] lawsuit in federal court versus state court." (Dkt. 3 at 9.) Yet some courts have held that depriving the defendant of a properly-invoked federal forum weighs *against* allowing amendment. *See Akbani v. TRC Eng'rs, Inc.*, 2009 WL 2614473, at *4 (N.D. Tex. Aug. 25, 2009). Here, Plaintiff does not assert that Lear's "tactic" was legally improper under the circumstances, nor does it offer any authority in support of such a conclusion. As a separate matter, Plaintiff points out that its amended complaint, apart from joining Moreno and Loyo, asserts additional facts, causes of action, and claims that should be allowed to proceed. (Dkt. 17 at 9.) But again, nothing in this Order should be taken to preclude the possibility of a separate amendment that does not work to defeat diversity jurisdiction.

### <u>Conclusion</u>

In light of the above, the Court concludes that the balance of the *Hensgens* factors weighs against granting Plaintiff leave to amend its complaint to join Moreno and Loyo as co-

defendants, and thus Plaintiff's motion to amend (Dkt. 3) and its motion to remand (Dkt. 4) are hereby DENIED.

IT IS SO ORDERED.

SIGNED this 29th day of September, 2016.

_____
Diana Saldaña
United States District Judge