UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RAGAR TRANSPORTATION, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 5:15-CV-223 |
| | § | |
| LEAR CORPORATION, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

The facts giving rise to this commercial shipping fee dispute should now be well-familiar. Plaintiff Ragar Transportation, Ltd. was hired in 2009 by written agreement to provide transportation services for Lear Corporation, a manufacturer of automotive seat components, through Lear's logistics management agent, Ryder Integrated Logistics, Inc. Ryder oversaw the logistics services in question until 2015, when a new agreement was signed with Penske Logistics, LLC serving as Lear's agent in the place of Ryder. The 2009 and 2015 agreements provided that Plaintiff was to pick up seat component parts and deliver them to Lear's assembly and manufacturing plants in shipments designated either "one way" or "round trip." Quite often, however, shipments initially designated as round-trip were modified to one-way just before or during transit. Eventually, a dispute arose over the level of compensation for these modified shipments, such that Lear came to withhold payment for over $2 million in Plaintiff's invoiced services. Plaintiff now brings suit against Lear and its two agents, Ryder and Penske, grounded in part on fraud-based theories of liability.

Currently pending are motions for change of venue filed by Lear and Penske (Dkts. 2,

23), who will be collectively referred to as "Defendants."[1] Defendants' motions are predicated on a forum selection clause in their 2015 agreement with Plaintiff. (*See* Dkt. 2 at 2-3.) This clause provides in pertinent part that "[t]he parties consent to the exclusive jurisdiction of the appropriate federal court in the U.S. District Court for the Eastern District of Michigan, Southern Division . . . for any legal or equitable action or proceeding arising out of, or in connection with, this Agreement." (*See id.*, Attach. 1 at 9.) Noting that subsection (a) of the change of venue statute, 28 U.S.C. § 1404, allows for transfer "to any district or division to which all parties have consented," Defendants thus ask that this case be transferred to the Eastern District of Michigan. (Dkt. 2 at 3-4.)

Plaintiff now offers briefing in opposition to a change of venue. (Dkts. 15, 31, 37.) Whether a forum-selection clause applies depends on two separate inquiries relating respectively to the clause's *enforceability* and its *scope. See Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615-16 (5th Cir. 2007) (per curiam). Plaintiff invokes both inquiries. In terms of enforceability, the Fifth Circuit recognized through *Haynsworth v. The Corporation*, 121 F.3d 956 (5th Cir. 1997) that it is unreasonable to hold a resisting party to a forum-selection clause where that party shows either that (1) the incorporation of the clause into the agreement was the product of fraud or overreaching, (2) they will be deprived of their day in court because of the inconvenience or unfairness of the selected forum, (3) the fundamental unfairness of the chosen law will deprive them of a remedy, or (4) enforcement of the clause contravenes a strong public policy of the forum state. *Id.* at 963. Plaintiff complains primarily under *Haynsworth* factor (1) that it was induced into agreeing to the forum-selection by Defendants' fraudulent acts and

---

[1] Though a party-defendant, Ryder has submitted a notice voicing its opposition to a change of venue (Dkt. 34), and thus the Court's use of the "Defendants" moniker should not be understood to refer to this party.

omissions. (*See* Dkt. 15 at 2, 5-8, 12-13.) It also contends in terms of factor (2) that coordinating a trial in Michigan would be impossible. (*See id.* at 13-14.) As a separate matter, and in terms of the broader inquiry, Plaintiff takes the position that the present case does not fall within the scope of the forum-selection clause. (*See id.* at 2, 8-10, 13.) Defendants have submitted briefing in reply. (Dkts. 21, 35.)

Having considered the briefs and the applicable law, the Court is of the opinion that Defendants' motions for change of venue should be granted.

## Discussion

The matters of the enforceability and scope of the forum-selection clause will be discussed in turn.

### A. Enforceability

Discussed separately for purposes of the enforceability inquiry are the two *Haynsworth* factors raised by Plaintiff, specifically, those implicating fraud and inconvenience.

**1. Fraud or overreaching**

As the parties would agree, a forum-selection clause is not enforceable if such clause made its way into a contract by way of fraud or coercion. *Haynsworth*, 121 F.3d at 963. Allegations of fraudulent conduct as to the contract as a whole, however, are irrelevant for purposes of the enforceability determination. *See id.* Instead, the inquiry must be aimed directly at whether the forum-selection clause itself is the product of fraud in the inducement. *See id.*

In support of fraud in the inducement, Plaintiff contends that it was first contacted in November of 2014 by Defendants about the signing of a new carrier agreement. (Dkt. 15 at 5.) Plaintiff asked Defendants why Penske would be taking Ryder's place as the logistics manager, and Defendants are said to have responded that "Lear and Ryder had simply decided to part

ways." (*Id.*) Supposedly unbeknownst to Plaintiff, however, Lear and Ryder were on the cusp of active litigation concerning Ryder's management of the transportation lanes subject of the 2009 agreement. (*See id.*) By December of 2015, while Plaintiff and Defendants were negotiating the new agreement, Lear and Ryder's dispute made its way before this Court in Civil Action L-14-43, which was also apparently at Plaintiff's unawares. (Dkt. 15 at 6.) Indeed, Plaintiff claims that throughout their negotiations, it continued to ask Defendants about the reason for Ryder's replacement, only to be "assured . . . that business would continue to be conducted in the manner in which it had in the past, and that the change from Ryder to Penske was purely an administrative decision." (Dkt. 31 at 4.) Even upon the execution of the new agreement in January of 2015—again, the agreement containing the forum selection clause—Defendants allegedly had yet to notify Plaintiff of the pending civil action between Lear and Ryder. (*See* Dkt. 15 at 6; *see also* Dkt. 31 at 5-6.) Now, Plaintiff claims that it "would have never agreed to the [forum-selection clause] had [Defendants] not misrepresented [by non-disclosure] the existence of Lear's lawsuits and the problems Lear had with Ryder" (Dkt. 15 at 7), "even if it meant that the [2015 agreement] would not have been executed" (Dkt. 31 at 5). Otherwise, Plaintiff asserts that Defendants "strong-armed" the present version of the forum-selection clause and flatly rejected any attempts at its renegotiation. (Dkt. 15 at 13.) In Plaintiff's view, "[i]t is clear . . . that[ ] when [it] thought [that] [it] [was] just entering an agreement, [Defendants] were really . . . preparing to have the most leverage in the inevitable legal dispute amongst all the parties." (*Id.* at 7.)

Defendants are of the opinion, however, that Plaintiff's consent to the forum-selection clause and the Lear/Ryder litigation are "totally unrelated" matters. (*See* Dkt. 21 at 2.) Stated more fully, Defendants offer that Plaintiff—

> fails to make a connection between the existence of litigation between Lear and Ryder, and the choice of venue provision of the 2015 . . . agreement. It simply declares, without discussion or analysis, that it would not have agreed to the choice of venue provision if it was aware of the litigation between Lear and Ryder. Even if there had been unrelated litigation between Lear and Ryder at the time the 2015 . . . agreement was being finalized, [Plaintiff] offers no explanation of how that fact would have altered its evaluation of the choice of venue provision.

(*Id.* at 5-6.) Put another way, Defendants opine that Plaintiff "simply seeks to apply its allegations regarding fraudulent inducement of the 2015 . . . agreement to the forum-selection clause itself after the fact [and] without setting forth any specific evidence to support such a claim." (Dkt. 23 at 8-9.) They also attempt to distinguish the facts of the instant case from those of *Great Earth Companies, Inc., v. Simons*, 288 F.3d 878 (6th Cir. 2002), which according to Defendants presents the typical fraudulent-inducement scenario. (*Id.* at 9.)

Notwithstanding, Defendants submit the affidavit of Kevin Bender (Dkt. 24 at 1-4), a representative of Penske who negotiated the 2015 agreement with Plaintiff. Mr. Bender avers that he was unaware of any dispute, indeed "problems whatsoever," between Lear and Ryder during the negotiations, and thus that he "did not misrepresent anything to [Plaintiff] or fail to disclose anything to [Plaintiff] with respect to the replacement of Ryder by Lear." (*Id.*) He goes on to affirm that "[a]t no time did [he] conceal or misrepresent any information in order to secure [Plaintiff's] agreement to the forum-selection clause . . . ." (*Id.* at 3.) In response, Plaintiff requests the opportunity to conduct discovery for purposes of attempting to controvert Mr. Bender's claims. (Dkt. 31 at 2-3; Dkt. 37 at 3-4.) Defendants oppose such a request, which they characterize as a mere "fishing expedition." (Dkt. 35 at 5-8.)

What Mr. Bender may or may not have known or disclosed, however, is all but irrelevant given the conclusory nature of Plaintiff's claim of fraud in the inducement. The Court agrees with Defendants that Plaintiff simply fails to explain how its assessment of the forum-selection

clause would have changed had it been informed of the Lear/Ryder dispute. Indeed, discovery would be of no use to Plaintiff considering that this missing information lies wholly within its own purview. More to the point, any allegations of fraud specific to the forum-selection clause are missing from Plaintiff's pleadings. The case of *Great Earth* is especially instructive in this regard, as it provides an example of the form that such allegations will generally take. In *Great Earth*, the court of appeals readily concluded that the plaintiff had fraudulently induced the defendants to agree to the forum selection clause, which provided for arbitration in New York, by knowingly misrepresenting through a circular that it would not seek arbitration outside of Michigan. *See Great Earth*, 288 F.3d at 884, 890. Here, on the other hand, Plaintiff does not suggest that Defendants ever made any representations—oral or written—about waiving the forum-selection clause in practice. Otherwise, Plaintiff submits that knowing of the Lear/Ryder dispute would have caused it to altogether abandon the 2015 agreement. (*See* Dkt. 31 at 5.) And this statement suggests that Plaintiff is merely attempting to bootstrap its attack on the forum-selection clause to its broader cause of action for fraudulent inducement, which of course relates to the validity of the agreement as a whole.

Finally, the Court addresses Plaintiff's claim of "strong-arming" by the Defendants. In this regard, Plaintiff asserts, with little further detail, that it "tried to change [the forum-selection clause] but was told no." (*See* Dkt. 15 at 13.) By its use of the "strong-arming" term, Plaintiff is presumably referring to the concept of "overreaching" as contemplated by *Haynsworth*. "'Overreaching' is 'that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties.'" *Haynsworth*, 121 F.3d at 965 n.17 (quoting Black's Law Dictionary 1004 (6th ed. 1990)). Plaintiff here, however, is clearly a sophisticated shipping company which stands on

comparable footing with Defendants. This is evidenced by Plaintiff's own assertion that it notified Lear of its intent to stop servicing the two trucking lanes, only to be offered "more money" to continue its operations. (*See* Dkt. 15, Attach. 3 at 3-4.) Furthermore, all indications are that Plaintiff—again, the sophisticated company that it is—was indeed able to negotiate freely. *See Gary E. Patterson, P.C. v. Feldman*, 2005 WL 3307527, at *6 (W.D. Tex. Dec. 6, 2005) (citing *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 116 (5th Cir. 1996)) ("The parties in this case were both law firms and lawyers, and there is no allegation of any inability to negotiate freely."). To the extent that Defendants put to Plaintiff a "take-it-or-leave-it offer," these generally go to the validity of the contract as a whole and thus are incapable of overcoming a forum-selection clause. *See Haynsworth*, 121 F.3d at 965.

As such, Plaintiff fails to meet its burden of establishing that the forum-selection clause was the product of fraud in the inducement.

**2. Inconvenience or unfairness**

Also under *Haynsworth*, Plaintiff contends that it will be deprived of its day in court because of the inconvenience associated with a Michigan forum. As framed by Plaintiff, "a central issue in this case is whether or not advance notice was given by Lear or Ryder or Penske when return loads were not going to be provided[,]" and "[t]herefore, the testimony of the 172 drivers [who serviced the two shipping lanes] will be crucial . . . ." (Dkt. 15 at 13-14.) In this regard, Plaintiff notes that "[t]hese witness [sic] will attest to the lack of notice by Lear that shipments were cancelled and that Lear kept drivers waiting overnight and/or for days for return shipments that were never provided." (Dkt. 37 at 10.) But because "[a]ll of the drivers are Texas residents[,] [it] would be impossible to coordinate all their attendance at trial in Michigan." (Dkt. 15 at 14.) Plaintiff highlights that haling these drivers into a Michigan court will be all the more

difficult considering that they are independent contractors as opposed to its own employees. (Dkt. 37 at 10-11.) In Defendants' view, however, any inconvenience Plaintiff would face from a trial in Michigan should come as no surprise. (*See* Dkt. 21 at 7; *see also* Dkt. 23 at 10-12.)

Again, the Court concludes that Plaintiff fails to meet its burden under *Haynsworth*. While the testimony of at least some of the drivers is likely relevant to Plaintiff's case (a notion which Defendants do not contest), it is simply beyond belief that Plaintiff would ever seek to depose, let alone call as a trial witness, each and every one of the 172 drivers supposedly affected by Lear's reading of the agreements. Even if it were, this is a decidedly large number of witnesses, and Plaintiff is sure to find a suitable number among them who are willing and able to testify in Michigan. Whatever the case, insofar as litigation in that forum will in fact pose *some* inconvenience, this is something that Plaintiff, as a corporation well-versed in the shipping industry, would have anticipated. Indeed, "[w]hen parties enter into an agreement with a forum-selection clause, they 'effectively represent to each other that the agreed forum is not so inconvenient that enforcing the clause will deprive either party of its day in court, whether for costs or other reasons.'" *Bancroft Life & Cas. ICC, Ltd. v. FFD Res. II, LLC*, 884 F. Supp. 2d 535, 559 (S.D. Tex. 2012) (quoting *In re Lyon Fin. Servs., Inc.*, 257 S.W.3d 228, 234 (Tex. 2008)).

The Court is thus of the opinion that Plaintiff's claims of inconvenience are grossly exaggerated and otherwise insufficient to overcome the forum-selection clause.

**B. Scope**

Lastly, with regards to the scope of the instant litigation, Plaintiff argues that—

the majority of the issues in this case do not fall within the scope of the 2015 [agreement's] forum-selection clause, since the claims arise in great part from alleged overcharges for services rendered by [Plaintiff] under the 2009 [a]greement, which does not contain a forum selection clause or the set-off clause

upon which Lear relied in withholding over $2.3 million it owes [Plaintiff]. (Dkt. 37 at 10.) According to Plaintiff's estimates, invoices under the 2015 agreement total just over $880,000 in services, approximately $240,000 of which "[do] not even reflect the problem[s] alleged by Lear . . . ." (*See id.*, Attach. 1 at 17.)

It is the language of the forum-selection clause itself that determines which causes of action fall within its scope. *See Braspetro*, 240 F. App'x at 616. Whether the scope of a forum-selection clause extends to extra-contractual disputes and parties will depend on how broadly the clause is worded. *See JetPay Merchant Servs., LLC v. Merrick Bank Corp.*, 2014 WL 798373, at *2 (N.D. Tex. Feb. 28, 2014). "[F]orum-selection clauses that apply to all disputes that 'relate to' or 'are connected with' the contract are construed broadly, while clauses that apply to all disputes 'arising out of' . . . the contract are construed narrowly." *Brown v. Federated Capital Corp.*, 991 F. Supp. 2d 857, 862 (S.D. Tex. 2014).

The forum-selection clause at issue makes reference to actions "arising out of, or in connection with, [the 2015 agreement]." The "arising out of" language is narrow, and the "in connection with" language is broad. Where a forum-selection clause utilizes disjunctive narrow and broad phrases, it is the broader phrase which controls. *See JetPay*, 2014 WL 798373, at *3 (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir.1998)). Broad clauses "embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil*, 139 F.3d at 1067. Here, regardless of whether Plaintiff's claims stem in greater part from the services rendered under the 2009 agreement, it is irrefutable that such dispute bears a "significant relationship" with the dispute under the 2015 agreement. While the identity of the logistics agents may have changed—first Ryder, then Penske—each agreement required Plaintiff to service the same two shipping

lanes for Lear as the principal.

Accordingly, Plaintiff fails to show that these disputes fall outside the scope of the forum-selection clause.

## **Conclusion**

For these reasons, the Court concludes that the forum-selection clause is enforceable and encompasses the entirety of Plaintiff's case. As such, Defendants' respective motions to transfer venue (Dkts. 2, 23) are hereby GRANTED. The Clerk of Court is DIRECTED to TRANSFER this case to the United States District Court for the Eastern District of Michigan, Southern Division. The Clerk is further DIRECTED to TERMINATE the case from this Court's docket.

IT IS SO ORDERED.

SIGNED this 29th day of September, 2016.

_____
Diana Saldaña
United States District Judge